O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

VANESSA G. OWENS,          ) Case No. EDCV 12-0455-JPR
                         )
           Plaintiff,   )
                         ) MEMORANDUM OPINION AND ORDER
      vs.           ) AFFIRMING THE COMMISSIONER
                         )
MICHAEL J. ASTRUE,      )
Commissioner of the Social  )
Security Administration,   )
                         )
         Defendant.   )
                         )

**I.   PROCEEDINGS**

Plaintiff seeks review of the Commissioner's final decision denying her application for Social Security Supplemental Security Income benefits ("SSI"). The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c). This matter is before the Court on the parties' Joint Stipulation, filed January 23, 2013, which the Court has taken under submission without oral argument. For the reasons stated below, the Commissioner's decision is affirmed and this action is dismissed.

1

## II.  BACKGROUND

Plaintiff was born on June 8, 1961.  (Administrative Record ("AR") 112.)  She has a 12th-grade education.  (AR 131.)  From 1971 to 1986 Plaintiff worked as a trapeze artist and stunt performer, and from 1987 to 1995 she worked as a cashier.  (AR 133.)  She stopped working full time in 1995, when she gave birth to a special-needs child.  (AR 26-27.)  She last worked in 1999, as a home attendant.  (AR 27, 33.)  Plaintiff previously filed two unsuccessful applications for SSI, the most recent of which was denied on August 10, 2005.  (AR 38.)  On June 2, 2009, Plaintiff filed the instant application for SSI, alleging a disability onset date of August 11, 2005.  (AR 112-17.)  Plaintiff claimed to be disabled because of degenerative disc disease, fibromyalgia, hypertension, progressive cervical spondylosis, bilateral knee pain, severe anxiety, migraine headaches, and panic attacks.  (AR 125.)  Her SSI application was initially denied on November 18, 2009.  (AR 53-57.)  Plaintiff then requested reconsideration (AR 60), and on April 29, 2010, her application was denied again (AR 61-65).

After Plaintiff's application was denied a second time, she requested a hearing before an Administrative Law Judge ("ALJ").  (AR 67.)  A hearing was held on May 31, 2011, at which Plaintiff, who was represented by counsel, testified on her own behalf.  (AR 23-34.)  A vocational expert ("VE") also testified.  (AR 45-50.)  On June 23, 2011, the ALJ issued a written decision determining that Plaintiff was not disabled.  (AR 9-22.)  On July 14, 2011, Plaintiff requested review of the ALJ's decision.  (AR 7-8.)  On February 21, 2012, the Appeals Council denied Plaintiff's request

for review.  (AR 1-6.)  This action followed.

**III. STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. § 405(g); Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion.  Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  It is more than a scintilla but less than a preponderance.  Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).  To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996).  "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner.  Id. at 720-21.

**IV.   THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted, or is expected to last, for a continuous period of at least 12 months.  42

U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

A.   The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled.   20 C.F.R. § 416.920(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996).   In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied.   § 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, the claimant is not disabled and the claim must be denied.   § 416.920(a)(4)(ii).   If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.   § 416.920(a)(4)(iii).   If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient

1  residual functional capacity ("RFC")[1] to perform her past work;

2  if so, the claimant is not disabled and the claim must be denied.

3  § 416.920(a)(4)(iv).  The claimant has the burden of proving that

4  she is unable to perform past relevant work.  Drouin, 966 F.2d at

5  1257.  If the claimant meets that burden, a prima facie case of

6  disability is established.  Id.  If that happens or if the

7  claimant has no past relevant work, the Commissioner then bears

8  the burden of establishing that the claimant is not disabled

9  because she can perform other substantial gainful work available

10  in the national economy.  § 416.920(a)(4)(v).  That determination

11  comprises the fifth and final step in the sequential analysis.

12  § 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

13        B.   The ALJ's Application of the Five-Step Process

14        At step one, the ALJ found that Plaintiff had not engaged in

15  any substantial gainful activity since June 2, 2009, the date of

16  her SSI application.  (AR 14.)  At step two, the ALJ concluded

17  that Plaintiff had the severe impairments of "lumbosacral strain,

18  mild arthritis of the right knee, and bilateral carpal tunnel

19  syndrome."  (Id.)  At step three, the ALJ determined that

20  Plaintiff's impairments did not meet or equal any of the

21  impairments in the Listing.  (AR 14-15.)  At step four, the ALJ

22  found that Plaintiff was able to perform a full range of medium

23  work.[2]  (AR 15.)   Based on the VE's testimony, the ALJ concluded

24

25        [1]RFC is what a claimant can still do despite existing
    exertional and nonexertional limitations.  20 C.F.R. § 416.945; see
26  Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

27        [2]"Medium work" involves "lifting no more than 50 pounds at a
    time with frequent lifting or carrying of objects weighing up to 25
28  pounds."  20 C.F.R. § 416.967(c).  The regulations further specify

that Plaintiff could perform her past relevant work of in-home
support provider. (AR 17.) Accordingly, the ALJ determined that
Plaintiff was not disabled. (Id.)

**V.   DISCUSSION**

Plaintiff alleges that the ALJ erred in finding that
Plaintiff's migraine headaches were not a severe impairment and
in evaluating the opinions of her treating physician. (J. Stip.
at 3.) Neither of these contentions warrants reversal.[3]

   A.   The ALJ Did Not Err in Considering the Opinions of
        Plaintiff's Treating Physician

Plaintiff contends that the ALJ did not properly evaluate
the opinions of her treating physician, Dr. V. Duane Sisson. (J.
Stip. at 10-16.) Reversal is not warranted on this basis because
the ALJ gave specific and legitimate reasons for rejecting Dr.
Sisson's opinions, and those reasons were consistent with
substantial evidence in the record.

        1.   Applicable law

Three types of physicians may offer opinions in social
security cases: "(1) those who treat[ed] the claimant (treating
physicians); (2) those who examine[d] but d[id] not treat the
claimant (examining physicians); and (3) those who neither
examine[d] nor treat[ed] the claimant (non-examining
physicians)." Lester, 81 F.3d at 830. A treating physician's

_____

that "[i]f someone can do medium work, we determine that he or she
can also do sedentary and light work," as defined in § 416.967(a)-
(b). Id.

   [3]The Court has reversed the order in which it addresses
Plaintiff's claims from that followed by the parties to avoid
repetition and for other reasons.

1   opinion is generally entitled to more weight than the opinion of

2   a doctor who examined but did not treat the claimant, and an

3   examining physician's opinion is generally entitled to more

4   weight than that of a nonexamining physician.   Id.

5        The opinions of treating physicians are generally afforded

6   more weight than the opinions of nontreating physicians because

7   treating physicians are employed to cure and have a greater

8   opportunity to know and observe the claimant.   Smolen v. Chater,

9   80 F.3d 1273, 1285 (9th Cir. 1996).   The weight given a treating

10  physician's opinion depends on whether it was supported by

11  sufficient medical data and was consistent with other evidence in

12  the record.   See 20 C.F.R. § 416.927(c)(2).   If a treating

13  physician's opinion was well supported by medically acceptable

14  clinical and laboratory diagnostic techniques and not

15  inconsistent with the other substantial evidence in the record,

16  it should be given controlling weight and rejected only for

17  "clear and convincing" reasons.   See Lester, 81 F.3d at 830;

18  § 416.927(c)(2).   When a treating physician's opinion conflicts

19  with other medical evidence or was not supported by clinical or

20  laboratory findings, the ALJ must provide only "specific and

21  legitimate reasons" for discounting that doctor's opinion.   Orn

22  v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007).   Indeed, the ALJ

23  may discredit treating-doctor opinions that are conclusory,

24  brief, and unsupported by the record as a whole or by objective

25  medical findings.   See Batson v. Comm'r of Soc. Sec. Admin., 359

26  F.3d 1190, 1195 (9th Cir. 2004); Thomas v. Barnhart, 278 F.3d

27  947, 957 (9th Cir. 2002).   Other factors relevant to the

28  evaluation of a treating physician's opinion include the

7

"[l]ength of the treatment relationship and the frequency of examination" as well as the "[n]ature and extent of the treatment relationship" between the patient and the physician. § 416.927(c)(2)(i)-(ii).

## 2. Relevant facts

Dr. Sisson was Plaintiff's treating physician from at least January 2009 to May 2011. (AR 275-94, 308-33.) The treatment notes in the record indicated that she saw him approximately once a month during that time. (Id.) Dr. Sisson's notes documented Plaintiff's subjective complaints of back and knee pain, migraine headaches, stress from caring for her special-needs children, and requests for refills of her medication. (See id.) He noted that she potentially had fibromyalgia, "chronic pain syndrome," depression, and "migraine headaches," but his notes did not reference any test results or other medical evaluations. (See id.) He also indicated that he prescribed medications including Tylenol, Diphenhydramine (Benadryl), Tramadol, Soma, Maxalt, Diazepam (Valium), Lotrel, Amitriptyline, Propranolol, and Sulindac for Plaintiff's symptoms and that she visited him to request refills of those medications. (See id.; see also AR 129-30.) In February and March 2011, Dr. Sisson referred Plaintiff to physical therapy. (AR 304-06.)

In December 2006, Plaintiff was referred by Dr. Sisson to a neurologist, Dr. Richard Tindall, because of her migraine headaches. (AR 205.) After examining Plaintiff, Dr. Tindall found that her "neurologic examination is normal as is blood pressure." (Id.) He noted that "in between headaches [Plaintiff] does very well," and she had had "no episode of loss

8

of consciousness, paralysis or loss [of] vision or sensation."
(<u>Id.</u>)  He also noted that her medication, Maxalt, "very much
helps the headaches."  (<u>Id.</u>)  He ultimately recommended that
Plaintiff remain on Maxalt and begin treatment for her sleep
disorder, finding that "once the sleep disorder is corrected the
headaches should begin to be reduced in severity and frequency."
(AR 206.)

     In December 2007, Dr. Sisson signed an Authorization to
Release Medical Information form in connection with Plaintiff's
application for California Work Opportunity and Responsibility to
Kids ("CalWORKs") welfare benefits.  (AR 211.)  On the form,
boxes were checked indicating that Plaintiff had a "chronic"
"medically verifiable condition" that prevented her from
performing "certain tasks," but a box asking if Plaintiff was
"actively seeking treatment" was checked "no."  (<u>Id.</u>)  Boxes were
also checked indicating that Plaintiff was not able to work and
that her "condition" prevented her from "providing care for the
child(ren) in the home" and required "someone to be in the home
to care for [Plaintiff].")  (<u>Id.</u>)  From 2004 to 2006, Dr. Sisson
also signed yearly Medical Report forms in connection with
Plaintiff's CalWORKs applications, stating that Plaintiff was
permanently "incapacitated from work" because of chronic lower
back pain and knee pain, migraine headaches "2-3x / wk.," and
severe anxiety with panic disorder and chronic depression
aggravated by the stress of caring for a son with autism and
another with ADHD; he noted that she needed "someone to give
personal care [and] help with autistic child."  (AR 215-17.)
Plaintiff's previous treating physician, Dr. Susan Lim, filled

out nearly identical forms in 2001, 2002, and 2003.  (AR 218-20.)

In December 2007 Plaintiff apparently submitted to CalWORKs a "Physical Capacities" questionnaire on which boxes were checked[4] indicating that Plaintiff could sit, stand, and walk "0-2" hours at a time and "2-4" hours total in an eight-hour workday.  On the form it was also written that Plaintiff "cannot sit, stand or lie down for more than 15 minutes without experiencing severe pain"; her "incapacitation includes chronic severe L.B.P.,[5] radiculopathy [and] bilateral knee pain"; "C-T scan of the back revealed diffuse disk [sic] bulge protrusion pressing on the roof of the bilat. spine nerve"; "[patient] has reacurring [sic] carpal tunnel syndrom [sic] (bilat.) with numbness and severe arthritis pain"; "in 2004, [patient's] x-rays revealed progressively severe diffused [sic] involving the L2 to 5, early cervical degenerative disk [sic] disease C3-C6, lumbar spondylosis w/degeneration retrolisthesis L5-5, with early osteoarthritis to back [and] knees"; and "very sensitive upper sinus allergies, treated presently with benerdyl [sic] daily." (AR 212-14.)  Boxes were checked on the form indicating that Plaintiff could "never" and "occasionally" lift 10 pounds; she could "never" climb, stoop, kneel, crouch, or reach below her knees, from waist to knees, from waist to chest, or from chest to shoulders; and she could "occasionally" balance, crawl, and reach above her shoulders.  (AR 213.)  The form also included the

---

[4]As discussed _infra_, the Court purposely uses the passive voice throughout this paragraph.

[5]"L.B.P." presumably refers to lower back pain.

comments that "all physical movements are personal sacrafice [sic] in order to care for her special need children [and] are limited"; "some" of Plaintiff's medication "requires immediately sitting or lying down to relax the body"; and Plaintiff's ability to work was limited by "severe anxiety w/ frequent migranes [sic], must wear back [and] knee supports at all times[,] not being able to concentrate with panic attacks and early menopause symptoms, must be available for special need children." (<u>Id.</u>)

With respect to Plaintiff's mental capabilities, a December 2007 "Mental Capacities" form contained the following comments:

> Pt. has been overwhelmed by the responsibility of caring for her 2 young children as a single parent without any family help.  Her eldest 12 yr old diagnosed (severely handicapped) with autism, ADHD, cerebral palsy, severe visual acuity following several eye surgeries.
>
> . . .
>
> Vanessa's overwhelming responsibilities resulted in severe anxiety and panic disorder with sever [sic] depression.   With  the  patient's  severe  chronic  + progressive disorders and now experiencing menopause + high blood pressure, Vanessa actually needs someone to give personal in-home care for her 4 hrs. per day, not just help care to [sic] the handicapp [sic] child.
>
> . . .
>
> Due  to  Vanessa's  disabling  medical  condition,  My Professional opinion is that she remains disable [sic] from any type of gainful employment and as requested presently participating in further evaluation including

11

1    MRI's, pain management, and psychological support in

2    order to care for her family.

3    . . .

4    Vanessa's condition is chronic and permanent for more

5    than 10 yrs. now and should qualify for some type of in-

6    home help and or disability supplement.

7  (AR 214.)  The two forms were not signed by Dr. Sisson or any

8  other doctor, though they each did bear a stamp with the name,

9  address, and phone number of "Baseline Medical Clinic," where Dr.

10 Sisson apparently practiced.  (See AR 285.)  The handwriting on

11 the forms does not match the handwriting on the CalWORKs forms

12 Dr. Sisson signed or in Dr. Sisson's treatment notes.  (Compare

13 AR 212-14 with AR 215-17, 275-84, 288-90.)  Rather, the

14 handwriting on the two forms appears similar to the handwriting

15 on documents Plaintiff submitted in connection with her SSI

16 application, including one document apparently written by

17 Plaintiff stating that she has "a chronic lumbar disease

18 progressively severe and diffuse, involving the L2 to 5 level

19 plus bilateral knee pain with daily swelling"; "early

20 degenerative cervical degeneration disk [sic] disease C3-C6,

21 lumbar spondylosis with degeneration retrobisthenis [sic] L5-S1,

22 and early osteoarthritis of the knees"; and "lumbar C-T scan of

23 her back revealed diffuse disk [sic] bulge with central disk

24 [sic] protrusion which is pressing the bilateral L5 nerve root,

25 but no spinal stenosis was revealed."  (AR 168, 178.)  The

26 administrative record does not contain copies of the x-rays and

27 CT scan referenced in the CalWORKs documents apparently filled

28 out by Plaintiff and Plaintiff's SSI application.  As explained

12

below, however, it does include more recent x-rays.

In September 2009, Plaintiff was examined by consulting orthopedist Dr. Bunsri Sophon. (AR 245-49.) Dr. Sophon found that Plaintiff's posture and gait were normal; her cervical spine had "normal curvature" with "no deformity or asymmetry," swelling, palpable mass, inflamation, or tenderness and no evidence of muscle atrophy or spasm, with full range of motion. (AR 246.) Further, her thoracic and lumbar spine showed no evidence of tenderness or muscle spasm, with 60/90 degree flexion, 20/30 degree extension, and 20/25 degree lateral bending bilaterally; her straight-leg-raising test was normal; her upper and lower extremities were all normal, with no decreased range of motion and no deformity, swelling, palpable mass, inflamation, or tenderness; her neurological examination and motor strength were normal; and x-rays of her spine showed normal alignment as well as narrowing of the L5-S1 disc space but no evidence of spondylolisthesis. (AR 245-48.) Dr. Sophon diagnosed Plaintiff with lumbosacral strain and concluded that she was "capable of lifting and carrying 50 pounds occasionally, 25 pounds frequently," and "is restricted to sitting, standing and walking 6 hours out of an 8-hour workday." (AR 248.)

In November 2009, consulting psychiatrist Dr. Linda Smith performed a complete psychiatric evaluation of Plaintiff. (AR 254-60.) Dr. Smith found that Plaintiff "was not very genuine and truthful," and there was "evidence of exaggeration, manipulation and attempting to sidestep questions"; she concluded that Plaintiff likely suffered from a "mood disorder not otherwise specified" but was not impaired in her ability to work.

13

1   (Id.)  Dr. Smith noted that Plaintiff "sounds like she believes
2   her claim is that she should receive social security for herself
3   because it is stressful raising a disabled child and she needs
4   assistance raising him from social security."  (AR 254.)

5        Also in November 2009, consulting psychiatrist Dr. H.
6   Hurwitz evaluated Plaintiff and found that she had an affective
7   disorder, anxiety-related disorder, and disturbance of mood but
8   was only mildly restricted in her activities of daily living and
9   moderately limited in maintaining social functioning.  (AR 261-
10  69.)  He did not find any other limitations.  (See id.)  He noted
11  in evaluating Plaintiff's mental RFC that she was "moderately"
12  limited in her ability to work with others, interact with the
13  general public, accept instructions and respond to criticism, and
14  set realistic goals or make plans independently of others; he
15  found that she was not significantly limited in any other
16  category.  (AR 272-74.)  He concluded that Plaintiff's "cognition
17  is adequate to perform complex work tasks"; she "has adequate
18  pace and persistence to sustain complex work tasks"; she "can
19  relate in a reasonable fashion with coworkers and supervisors,
20  but not with the public"; and she "can adapt to a variety of work
21  settings."  (AR 274.)

22       In her written opinion, the ALJ analyzed the medical
23  evidence from Dr. Tindall, Dr. Sophon, Dr. Sisson, Dr. Smith, and
24  Dr. Hurwitz.  (AR 16-17.)  With respect to the CalWORKs documents
25  and the evidence from Dr. Sisson, the ALJ noted:

26       The certifications of exemption from the CalWorks and
27       Welfare  to  Work  Programs  do  not  constitute  medical
28       evidence  for  the  Social  Security  disability  program.

14

These forms indicate that the claimant is exempt from work requirements because she must care for her special needs children. Although reference is made to the claimant's complaints of pain, there is no objective medical or radiological evidence or findings which document the existence or severity of her physical impairments.

. . .

Treatment records from the claimant's primary care physician, V. Duane Sisson, MD, covering the period from December 16, 2009 through May 12, 2011 indicated that the claimant was seen for various complaints including fibromyalgia, back pain, headaches, and chronic pain syndrome. There is no evidence that objective radiological testing was performed. The claimant was treated with analgesic medications.

(AR 16 (citations omitted).) The ALJ also found that Plaintiff's subjective symptom testimony was not fully credible and further gave little weight to a third-party function report submitted by Plaintiff's neighbor, findings Plaintiff does not challenge. (AR 17.)

　　　　3. <u>Analysis</u>

Because Dr. Sisson's opinions conflicted with the opinions of Dr. Tindall, Dr. Sophon, Dr. Smith, and Dr. Hurwitz as well as other evidence in the record, his opinions were not entitled to controlling weight and the ALJ needed only to provide "specific and legitimate reasons" for discounting them. <u>Orn</u>, 495 F.3d at 632. The ALJ did so. With respect to Dr. Sisson's treatment

15

notes, he did not opine in those notes that Plaintiff was unable to work.  Rather, he documented Plaintiff's complaints, primarily of pain, stress, and headaches, and noted the medications prescribed for those complaints.  (See AR 275-94, 308-33.)  As the ALJ noted, Dr. Sisson's treatment notes primarily reflected Plaintiff's subjective complaints; there was no documentation in the notes of objective testing or other medical evidence supporting Plaintiff's disability claims.  (AR 16.)  To the extent the ALJ rejected Dr. Sisson's opinions that Plaintiff's ability to work was more restricted than the ALJ found, she gave specific and legitimate reasons for doing so, and reversal is therefore not warranted on that basis.

        The ALJ was entitled to reject Dr. Sisson's opinions to the extent they were based on Plaintiff's discredited subjective complaints.  See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) ("Because the present record supports the ALJ in discounting [claimant's] credibility . . . he was free to disregard [treating physician's] opinion, which was premised on her subjective complaints.").  The ALJ properly found that Plaintiff was not credible, as she appeared to be seeking disability benefits because she was overwhelmed by caring for two special-needs children, not because she was herself disabled.  (AR 16-17.)  As the ALJ noted, the psychiatric evaluator, Dr. Smith, found that Plaintiff did not appear to be genuine or truthful, attempted to manipulate the results of the examination, and exaggerated her symptoms.  (AR 16, 254-60.)  The record demonstrates that Plaintiff has repeatedly stated that she stopped working because of the birth of her disabled son in 1995

1  and that she needed disability benefits because she needed help

2  raising two special-needs children. (See AR 26-27, 29, 109, 122,

3  160, 163, 166, 179, 254, 306.) Plaintiff does not challenge the

4  ALJ's findings as to her credibility. (See generally J. Stip.)

5  Also, as the ALJ noted, the test results from Dr. Tindall and the

6  examination results from Dr. Sophon, Dr. Smith, and Dr. Hurwitz

7  all indicated that Plaintiff was not significantly limited in her

8  ability to work. (AR 16-17.) Based on that evidence, the ALJ

9  properly discounted Plaintiff's subjective testimony, and by

10 extension, Dr. Sisson's opinions to the extent they were based on

11 Plaintiff's subjective complaints and not on objective medical

12 findings. See Tonapetyan, 242 F.3d at 1149; Batson, 359 F.3d at

13 1195 ("The ALJ need not accept the opinion of any physician,

14 including a treating physician, if that opinion is brief,

15 conclusory, and inadequately supported by clinical findings.");[6]

16 Bruton v. Massanari, 268 F.3d 824, 826 (9th Cir. 2001) (holding

17 that ALJ properly considered fact that claimant stopped working

18 for reasons unrelated to medical disability). The fact that

19 Plaintiff's ailments were effectively treated with analgesic

20 medications was also a proper reason for the ALJ to reject Dr.

21 Sisson's opinion. See, e.g., Rollins v. Massanari, 261 F.3d 853,

22 856 (9th Cir. 2001) (ALJ may reject opinion of treating physician

23 who prescribed conservative treatment yet opined that claimant

24

25         [6]For example, Dr. Sisson's opinion that Plaintiff likely had
   fibromyalgia (AR 276-84) was not supported by the necessary
26 findings. See SSR 12-2P, 2012 WL 3104869, at *2-3 (listing
   diagnostic criteria for fibromyalgia, including that claimant must
27 suffer widespread pain for at least three months and pain on
   digital palpation should be present in at least 11 of 18 specific
28 sites on the body).

1  was disabled); cf. Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th

2  Cir. 2008) (ALJ may infer that claimant's "response to

3  conservative treatment undermines [claimant's] reports regarding

4  the disabling nature of his pain").[7]

5      The ALJ also properly rejected the CalWORKs documents.

6  Plaintiff contends that Dr. Sisson filled out the Physical

7  Capacities and Mental Capacities forms (AR 212-14) stating that

8  she was unable to work (see J. Stip. at 10-11), but it is not at

9  all clear that Dr. Sisson had anything to do with them.  The

10 handwriting on the forms does not match Dr. Sisson's handwriting

11 on his treatment notes or on the other CalWORKs forms, which Dr.

12 Sisson signed.  (Compare AR 212-14 with AR 215-17, 275-84, 288-

13 90.)  The handwriting in fact appears similar to Plaintiff's

14 handwriting on documents she submitted in connection with her SSI

15 application.  (See AR 168, 178.)  There are other indications

16 that the forms were not filled out by Dr. Sisson.  For example,

17 the forms contained emotional and subjective statements unlikely

18 to have come from an impartial doctor, such as that Plaintiff's

19 "physical movements" are "personal sacrafice [sic] in order to

20 care for her special need children" and caring for her children

21 is an "overwhelming responsibilit[y]."  (AR 213-14.)  The forms

22 also contained misspellings of common medical terms, such as

23 "syndrom" and "disk," that a doctor would have been unlikely to

24 consistently misspell.  (AR 212-14.)  Indeed, a document

25

26      [7]To the extent Dr. Sisson's notes indicate that Plaintiff
   suffered from additional impairments that the ALJ did not find to
27 be severe, such as anxiety, depression, and fibromyalgia, Plaintiff
   does not appear to contest the ALJ's findings with respect to those
28 impairments.  (See generally J. Stip.)

Plaintiff submitted with her SSI application contained identical misspellings.  (AR 168, 178.)  It also contained nearly identical statements regarding alleged "chronic lumbar disease," "cervical degeneration disk disease C3-C6," "lumbar spondylosis with degeneration retrobisthenis [sic] L5-S1," and references to x-rays and CT scans that are not mentioned elsewhere in the record.  (See id.)  In sum, because it appears that someone other than Dr. Sisson – likely Plaintiff – filled out the CalWORKs Physical Capacities and Mental Capacities forms, and only an address stamp, not Dr. Sisson's signature, appears on them, nothing shows that the doctor approved of their contents or was involved in any way in filling them out, and the ALJ thus did not err in not according them the deference given to treating-physician opinions.  (See AR 16); see Mercer v. Astrue, 319 F. App'x 625, 626 (9th Cir. 2009) (ALJ properly rejected "unsigned" "cursory disability letter" allegedly from treating physician that conflicted with other medical evidence of record, including physician's own treatment notes); Moreno v. Astrue, No. 08cv1022-WQH-PCL, 2009 WL 2151855, at *16 & n.3 (S.D. Cal. July 17, 2009) (holding that ALJ properly rejected psychiatric review form allegedly completed by treating physician when form was unsigned and "multiple handwritings" on form did not match doctor's handwriting).

In any event, to the extent Dr. Sisson did fill out and sign CalWORKs forms indicating that Plaintiff could not work (see AR 211, 215-17), the ALJ gave specific and legitimate reasons for rejecting them.  As the ALJ correctly noted, determinations of disability for purposes of obtaining state welfare benefits are

1  not determinative of disability for Social Security purposes, and
2  although Dr. Sisson's medical findings may have been entitled to
3  deference, his opinion that Plaintiff was unable to work was not.
4  (AR 16); see 20 C.F.R. § 416.945(e); SSR 96-5p, 1996 WL 374183,
5  at *5 (Commissioner must make ultimate disability determination;
6  opinions from medical sources about whether a claimant is
7  "disabled" or "unable to work" "can never be entitled to
8  controlling weight or given special significance"); McLeod v.
9  Astrue, 640 F.3d 881, 885 (9th Cir. 2011) (noting that "a
10 treating physician ordinarily does not consult a vocational
11 expert or have the expertise of one"; treating physician's
12 evaluation of claimant's ability to work thus not entitled to
13 deference because "[t]he law reserves the disability
14 determination to the Commissioner"); see also 20 C.F.R. § 416.904
15 (disability determinations by other agencies not binding on
16 Social Security Administration).

17     As the ALJ correctly noted, Dr. Sisson's opinions regarding
18 Plaintiff's functional capacity, as stated in the CalWORKs forms,
19 were unsupported by objective medical evidence and were in fact
20 contradicted by substantial evidence in the record.   In
21 particular, as the ALJ noted, Dr. Sisson's statement that
22 Plaintiff was unable to care for herself or her children without
23 help was directly contradicted by Plaintiff's own statements that
24 she spent the majority of her time caring for her children and
25 doing extensive activities with them, without assistance. (See
26 AR 16, 41, 111, 144, 163, 170, 176-77, 179, 215-20, 256-57.)
27 Those activities included helping her children get ready for
28 school, cooking meals for them, driving at least one child to and

1   from school, helping her children with homework, doing household

2   chores, taking her children to doctor's appointments, going to

3   church, and playing games and doing other recreational activities

4   with her children.  (See AR 163, 176-77, 256-57.)  The ALJ

5   properly rejected Dr. Sisson's opinions on that basis.  See

6   Rollins, 261 F.3d at 856 (ALJ's finding that doctor's

7   "restrictions appear to be inconsistent with the level of

8   activity that [plaintiff] engaged in by maintaining a household

9   and raising two young children, with no significant assistance

10  from her ex husband," was specific and legitimate reason for

11  discounting opinion); Montalvo v. Astrue, 237 F. App'x 259,

12  261-62 (9th Cir. 2007) (holding that ALJ properly discredited

13  treating physicians' conclusions regarding severity of conditions

14  based in part on claimant's daily living activities of bathing

15  and dressing herself, seeing her children off to school, helping

16  with household chores, meeting with family, and going to the

17  mall).

18      Plaintiff also asserts that to the extent the ALJ found that

19  Dr. Sisson's opinions were not supported by sufficient objective

20  evidence, she had the duty to recontact him.  (J. Stip. at 15.)

21  "The claimant bears the burden of proving that she is disabled."

22  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999).  "An ALJ is

23  required to recontact a doctor only if the doctor's report is

24  ambiguous or insufficient for the ALJ to make a disability

25  determination."  Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th

26  Cir. 2005); see also 20 C.F.R. § 416.912(e).  The ALJ found the

27  evidence adequate to make a determination regarding Plaintiff's

28  disability, and, as noted above, her opinion was supported by

substantial evidence in the record.  Plaintiff mostly seems to
contend that the ALJ had a duty to recontact Dr. Sisson to obtain
the results of the "2004" x-rays or CT scans referenced in the
CalWORKs documents.  (See J. Stip. at 15; AR 212-14.)  As an
initial matter, these radiological studies are referenced only in
the documents Plaintiff appears to have filled out, not any of
Dr. Sisson's notes.  In any event, the ALJ had no duty to do so
because those documents were from December 2007 and the record
contained more recent x-ray and examination results, from
September 2009.  (See AR 245-48.)  Thus, the ALJ did not have a
duty to recontact Dr. Sisson.  See Bayliss, 427 F.3d at 1217.

Because the ALJ gave specific and legitimate reasons in
support of her evaluation of the medical evidence and those
reasons were supported by substantial evidence in the record,
reversal is not warranted on this basis.

B.   The ALJ Did Not Err in Determining that Plaintiff's
Migraine Headaches Were Not a Severe Impairment

Plaintiff also contends that the ALJ erred in determining
that Plaintiff's migraine headaches were not a severe impairment.
(J. Stip. at 3-5.)  Reversal is not warranted on this basis
because substantial evidence in the record supports the ALJ's
finding that Plaintiff's migraine headaches were not severe.

At step two of the sequential evaluation process, a
plaintiff has the burden to present evidence of medical signs,
symptoms, and laboratory findings that establish a medically
determinable physical or mental impairment that is severe and can
be expected to result in death or last for a continuous period of
at least 12 months.  Ukolov v. Barnhart, 420 F.3d 1002, 1004-05

1   (9th Cir. 2005) (citing 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D));[8]

2   see 20 C.F.R. §§ 416.920, 416.909.  Substantial evidence supports

3   an ALJ's determination that a claimant is not disabled at step

4   two when "there are no medical signs or laboratory findings to

5   substantiate the existence of a medically determinable physical

6   or mental impairment."  Ukolov, 420 F.3d at 1004-05 (citing SSR

7   96-4p).  An impairment may never be found on the basis of the

8   claimant's subjective symptoms alone.  Id. at 1005.

9       Step two is "a de minimis screening device [used] to dispose

10  of groundless claims."  Smolen, 80 F.3d at 1290.  Applying the

11  applicable standard of review to the requirements of step two, a

12  court must determine whether an ALJ had substantial evidence to

13  find that the medical evidence clearly established that the

14  claimant did not have a medically severe impairment or

15  combination of impairments.  Webb v. Barnhart, 433 F.3d 683, 687

16  (9th Cir. 2005); see also Yuckert v. Bowen, 841 F.2d 303, 306

17  (9th Cir. 1988) ("Despite the deference usually accorded to the

18  Secretary's application of regulations, numerous appellate courts

19  have imposed a narrow construction upon the severity regulation

20  applied here.").  An impairment or combination of impairments is

21  "not severe" if the evidence established only a slight

22  abnormality that had "no more than a minimal effect on an

23  individual's ability to work."  Webb, 433 F.3d at 686 (citation

24  omitted).

25      Although evidence in the record shows that Plaintiff likely

27      [8]A "medical sign" is "an anatomical, physiological, or
28  psychological abnormality that can be shown by medically acceptable
    clinical diagnostic techniques."  Ukolov, 420 F.3d at 1005.

                                23

suffered from migraine headaches, the existence of migraine headaches alone does not constitute a severe impairment if they do not prevent a plaintiff from working. See 20 C.F.R. § 416.920(c) (severe impairment is one that "significantly limits [claimant's] physical or mental ability to do basic work activities"). Substantial evidence supports the ALJ's finding that Plaintiff's migraine headaches were not severe. In December 2006, Plaintiff was evaluated by Dr. Tindall, who found that her neurologic results were normal and her headaches were effectively treated with medication. (AR 205.) There is no evidence in the record that Plaintiff underwent any further neurological examinations. Based on the aforementioned evidence, the ALJ reasonably concluded that Plaintiff's migraine headaches did not affect her ability to work because they were controllable with medication. (AR 14); see 20 C.F.R. § 416.929(c)(4)(iv) (ALJ may consider effectiveness of medication in evaluating severity and limiting effects of impairment); Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

     The only other evidence in the record documenting the severity of Plaintiff's migraine headaches is her own testimony and Dr. Sisson's treatment notes. Plaintiff stated that her daily activities included extensive activities with her children, such as cooking for them, getting them ready for school, helping them with their homework, and playing with them. (See AR 163, 176-77, 256-57.) Plaintiff's ability to perform extensive daily activities belies her claim that her headaches were severe. See

24

1  Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir.

2  2009); Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990)

3  (finding that claimant's ability to "take care of her personal

4  needs, prepare easy meals, do light housework and shop for some

5  groceries . . . may be seen as inconsistent with the presence of

6  a condition which would preclude all work activity") (citing Fair

7  v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989)).  Thus, the ALJ

8  properly discounted Plaintiff's subjective testimony.  Dr.

9  Sisson's notes primarily document Plaintiff's subjective

10 complaints of headaches and her requests for refills of her

11 medications; the fact that Plaintiff consistently requested

12 refills of her medications and did not pursue other treatment

13 supports the ALJ's finding (and Dr. Tindall's (see AR 205)) that

14 Plaintiff's headaches were controlled with medication.  (See AR

15 14, 276-77, 279, 282-83, 288, 308, 310, 312, 318-19, 328, 331.)

16 Plaintiff conceded at the hearing that Maxalt "allows the

17 headache to die down a little bit." (AR 31.)  She also admitted

18 in her application that she sometimes forgot to take her migraine

19 medication, which could account for any continuing headaches.

20 (AR 161.)  In sum, substantial evidence in the record supported

21 the ALJ's conclusion that Plaintiff's migraine headaches did not

22 have more than a minimal effect on her ability to work.

23      In any event, even if the ALJ erred by finding Plaintiff's

24 migraine headaches nonsevere, that error was harmless because she

25 considered Plaintiff's headaches when determining her RFC at step

26 four.  See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007)

27 (failure to address particular impairment at step two harmless if

28 ALJ fully evaluates claimant's medical condition in later steps

of sequential evaluation process); <u>see also</u> <u>Stout v. Comm'r, Soc.</u>
<u>Sec. Admin.</u>, 454 F.3d 1050, 1055 (9th Cir. 2006) (ALJ's error
harmless when "inconsequential to the ultimate nondisability
determination").   Specifically, the ALJ properly accounted for
any work-related impairments resulting from Plaintiff's migraines
by noting at step four that Plaintiff's headaches were
"associated with a sleep disorder and menopausal syndromes and
were controllable with medication," and thus they did not
significantly affect her ability to work.   (AR 16.)

Plaintiff is not entitled to remand on this ground.

**VI.   CONCLUSION**

Consistent with the foregoing, and pursuant to sentence four
of 42 U.S.C. § 405(g),[9] IT IS ORDERED that judgment be entered
AFFIRMING the decision of the Commissioner and dismissing this
action with prejudice.   IT IS FURTHER ORDERED that the Clerk
serve copies of this Order and the Judgment on counsel for both
parties.

DATED: February 27, 2013

_____
JEAN ROSENBLUTH
U.S. Magistrate Judge

_____

[9]This sentence provides: "The [district] court shall have
power to enter, upon the pleadings and transcript of the record, a
judgment affirming, modifying, or reversing the decision of the
Commissioner of Social Security, with or without remanding the
cause for a rehearing."

26